1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY JOSEF HECKMANN, | Case No. 1:13-CV-01351-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. 1) |

Plaintiff Harry Josef Heckmann, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 301 *et seq.* This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 7 & 8. The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Honorable Sandra M. Snyder, U.S. Magistrate Judge. Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence.

1

**BACKGROUND**

## I.  Procedural History

In a prior hearing decision dated December 10, 2009, an ALJ found that the Plaintiff retained the residual functional capacity to perform medium work and was not disabled.

On February 3, 2010, Plaintiff applied for supplemental security income.  Plaintiff alleges onset of disability in December 2009.  The Commissioner initially denied the claims on May 20, 2010, and upon reconsideration again denied the claims on July 20, 2010.  Plaintiff filed a timely request for a hearing on July 26, 2010.

On December 14, 2011, represented by counsel, Plaintiff appeared and testified at a hearing presided over by Robert E. Lowenstein, Administrative Law Judge ("the ALJ").  *See* 20 C.F.R. 404.929 *et seq.*  An impartial vocational expert, Jose Chaparro, also appeared and testified.

On February 6, 2012, the ALJ denied Plaintiff's application.  The Appeals Council denied review on May 1, 2013.  On July 5, 2013, Plaintiff filed a complaint seeking this Court's review.

## II.  Administrative Record

A.  Plaintiff's Testimony (December 14, 2011)

Plaintiff, born June 29, 1959, lived with his son (age 19 at the time of the hearing), and his mother-in-law, at Plaintiff's brother-in-law's house.  Plaintiff attended high school through 12th grade but did not graduate, does not have a GED, and is able to communicate in English.  Plaintiff testified that he last worked in 2009 as a tow truck operator, and had prior work as a tractor trailer truck driver and as an apartment maintenance worker.  Plaintiff testified that he was not currently working and had not worked since 2009.

Plaintiff testified that he was six feet tall, 215 pounds, and right handed.  Plaintiff reported that he had been separated since 1995, had no dependent minor children, and had a valid driver's license.  Plaintiff testified that he did not regularly attend religious services, nor did he regularly visit

2

with people outside of his household.  Plaintiff reported he raised chickens as a hobby and described gathering "about 10 eggs a day," which he either ate or gave away.

Plaintiff alleged onset of disability in December 2009, and testified that he has double vision. When asked by the ALJ what kept him from working, Plaintiff replied that, "Right now, it's the double vision and the money trying to get there.  My cars are not [operational], I'm using my brother-in-law's pick up.  And I [would] like to get back to driving a tow truck, but I just can't trust myself when [the double vision] occurs."  Plaintiff declared that he could perform the work of a security guard or "something like that."  Plaintiff described his concern at driving himself to a job. Plaintiff reported having driven himself approximately 20 minutes to the hearing.

In describing his daily activities, Plaintiff testified that he managed his self-care and was able to drive alone without assistance.  Plaintiff testified that he cooked "simple stuff," did dishes in the dishwasher, did his own laundry, made his own bed, vacuumed once per month, took out the garbage, but did not go shopping (for lack of funds), and did not do yard work.  Plaintiff reported that he fixed a sprinkler "now and then."  He described the following, ". . . when I was doing some yard work earlier this summer, I was pulling some grass around the palm tree and everything just started spinning, really fast.  And I had to walk back to the house like I was on skis . . . and about an hour or so later, I was better.  That was the first time that happened to me."  Plaintiff reported that his double vision episodes are "sporadic."  At the time of the hearing, he reported having no vision problems, but that he "had [an episode] yesterday at around ten in the morning."

To manage the double vision, Plaintiff described that "[I] just sit there and just rub [my eyes] until I get focused again."  He testified that that took "about a half minute or so."  He described "this double vision thing" as "very scary."  Plaintiff testified that he was not currently being treated by any doctors.  To manage his condition, Plaintiff reported that he was not currently taking any medication other than "a vitamin C pill every other day or so."  He testified that the last time he had his eyes examined by a doctor was "I think '07."  At the time of the hearing, he stated that "I could

3

see perfect now."  Describing the frequency of his condition, he stated that "when [the double vision] hits, it [is] just all of a sudden."

> To explain why he was not receiving treatment, Plaintiff stated:
>
> Well I figure doctors put me in this position and this last doctor I saw falsified this paper that came from you folks.  He gave me an eye examine [sic] which he never did and it states that there's nothing wrong with my eyes.  And I showed him this paper and he looked through his files and he's never – this is the first time he's seen it.  And this doctor is just so overloaded with patients that he just doesn't take the time to listen to my issues.

The ALJ asked Plaintiff whether he had attempted to find another doctor, to which Plaintiff replied that "the thing is I have no funding, I have no money to run around.  That's why they said get on this MSP program which is just going to throw me in the same bracket and go find a medical doctor, they [are] just going to give me a bunch of pills again."  Plaintiff testified that he was not receiving any assistance or food stamps.

> Plaintiff had the following exchange with the ALJ:
>
> Q       So you don't like doctors.  But … and they give you pills, and you didn't take the pills because –
>
> A       No, I was taking – no, no, I was taking the prescription medicine that they were giving me.  And then Medical cut me out, they just said hey, you're indigent or whatever and there's nothing wrong [with] you.  So they just cut me off all the medication.
>
> Q       So what kind of insurance do you have?
>
> A       I have nothing.

Plaintiff testified that he once had a habit of smoking three to four cigars per day, but had quit after an episode of pneumonia in February 2011.  Plaintiff reported that he has since started smoking cigars again at the same daily rate.

## B.  Medical Evidence

The ALJ properly considered the following medical records and opinions.  As the ALJ noted, the medical findings in this case are sparse; no treating or examining physician rendered an opinion as to the Plaintiff's abilities.  Further, there is no medical evidence that Plaintiff has ocular problems

4

or any condition associated with vision or vertigo.  The objective medical evidence is limited and merely shows that the Plaintiff has a plant calcaneal spur and mild multicompartmental degenerative joint disease in both knees.  There are minimal treatment records related to those conditions.  Consistent with his testimony at the hearing before the ALJ, Plaintiff argues that his eye condition is the basis for his disability.  By his argument that his eye problems are the reason he cannot work, Plaintiff implicitly concedes that his other mild conditions are not the basis for his disability.  As such, this Court would review medical evidence relevant to Plaintiff's eye condition.  However, none exists.

The State Agency consulting physician reviewed the medical evidence

In May 2010, at the request of the state agency, consultative physician Brian Ginsburg, M.D., reviewed Plaintiff's medical history and performed a physical residual functional capacity assessment.  Dr. Ginsburg observed that Plaintiff had not reported eye symptoms at a March 2010 physical exam.  Dr. Ginsburg noted that Plaintiff had blood pressure of 140/90, was 252 pounds, but otherwise had a "normal" exam.  The doctor listed Plaintiff's then-current prescriptions as Zocor, "HCTZ," aspirin, Metroprolol, diovan, and trilipix.  Dr. Ginsburg listed the significant objective findings as follows: x-ray of right and left knees showed mild multi-compartmental DJD, no evidence of fracture; x-ray of right foot was normal; x-ray of left foot showed plantar calcaneal spur; Plaintiff's March 2010 labs showed high triglycerides (196), "serum creat" high at 1.53, and high glucose at 101.  Based on the evidence, Dr. Ginsburg concluded that the Plaintiff was capable of the full range of medium work, with the following limitations: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk (with normal breaks for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand/foot controls) for an unlimited period, other than shown for lift and/or carry; had no limitations related to climbing, balancing, stooping,

kneeling, crouching, or crawling; and had no manipulative, visual, communicative, or environmental limitations.

In July 2010, at the request of the State Agency, consulting physician C. Lopez, M.D., reviewed Plaintiff's medical records and completed a case analysis.  Dr. Lopez specifically noted that "there hasn't been material change in his condition since the ALJ decision."  With no new evidence, Dr. Lopez's concluded that he agreed that Plaintiff was not disabled.

Medical records from February 2011 show that Plaintiff was treated for pneumonia at Clovis Community Medical Center's emergency department.  At approximately 11 p.m., the intake nurse documented that Plaintiff's chief complaint was coughing up blood for one day, but he denied fever.  Plaintiff reported a past medical history of hypertension and smoking.  After lab results, the Plaintiff was discharged at approximately 7:30 a.m. with directions to complete a course of antibiotics.  At discharge, Harry Heckman, M.D., directed Plaintiff to rest at home and arrange an appointment with his health care provider in "2-3 days."

There are no subsequent medical records.

C.   Vocational Expert Testimony (December 14, 2011)

Jose Chaparro testified as vocational expert ("VE").  The VE classified Plaintiff's past relevant work as a tractor trailer truck driver (DOT code 904.383-010) as semi-skilled, medium exertional level, and Specific Vocational Preparation ("SVP") level 4; his work as a janitor (DOT code 382.664-010) as semi-skilled, medium exertional level, and SVP level 3; and his work as a tow-truck operator (DOT code 919.663-026) as semi-skilled, medium exertional level, and SVP level 3.  Considering the demands of that work, the limitations of Plaintiff's residual functional capacity ("RFC"), and the Plaintiff's entire medical-vocational profile, the VE testified that a similarly capable individual would be able to perform the demands of Plaintiff's previous positions as they are actually and generally performed.  The VE testified that even were it necessary for the individual to avoid moderate exposure to cold, heat, wetness, humidity, airborne irritants, and

chemicals, he would be able to perform the demands of Plaintiff's previous positions as they are actually and generally performed.   The VE testified that if a similarly capable individual would also need a one-hour unscheduled break, that individual would not be able to perform any work.

### LEGAL STANDARD

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a) (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the first-step analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C .F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the

7

impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f).  If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404 .1520, 416.920.

### DISCUSSION

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility.  Specifically, Plaintiff challenges whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.  The Commissioner contends that the ALJ did not err in finding Plaintiff's testimony regarding his symptoms and severity of his limitations less than fully credible for the following reasons: (1) the ALJ supplied adequately clear and convincing evidence to support his findings and conclusion, and (2) his findings were consistent with the objective evidence of record and the conservative treatment provided to Plaintiff.  For the reasons below, the Court finds that substantial evidence supports the ALJ's findings and conclusion.

**I.    Presumption of Continuing Nondisability**

Before addressing the merits of Plaintiff's claims, the Court must address a threshold issue. Plaintiff Heckmann had a prior-related case that resulted in an unfavorable decision in December 2009, which he did not challenge.  In that case, Heckmann was found not disabled because the previous ALJ concluded that he retained the residual functional capacity to perform medium work and was capable of performing past relevant work.  Consequently, under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), there is a rebuttable presumption of continuing nondisability as to the unadjudicated period under the current applications for a period of disability, disability benefits, and supplemental security income. *See* Social Security Acquiescence Ruling ("AR") 97-4(9), 1997 WL 742758 (subsequent ALJ must adopt findings reached during sequential evaluation process on prior

claim absent "new and material evidence relating to such a finding . . . ."). To rebut this

presumption, Plaintiff must show a changed circumstance material to the determination of disability.

*Chavez*, 844 F.2d at 693. Even when a claimant overcomes this presumption of nondisability, a

prior ALJ's individual findings may still be entitled to some *res judicata* consideration in subsequent

proceedings. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (prior ALJ's

findings "cannot be reconsidered by a subsequent [ALJ] absent new information not presented to the

first [ALJ]") (citing *Chavez* 844 F.2d at 694); *see also* AR 97-4(9), 1997 WL 742758. If the

presumption is not rebutted, *res judicata* will apply. *Chavez*, 844 F.2d at 693.

## II.   The ALJ's Determination

Based on the weight of the medical opinions, the ALJ concluded that the Plaintiff's

subjective complaints were greater than the objective findings and not consistent with the objective

medical evidence.

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his

application date of February 3, 2010. His severe impairments were hypertension, hyperlipidemia,

scattered pneumonia, and degenerative joint disease of both knees. *See* 20 C.F.R. § 416.920(c).

None of these impairments alone or in any combination met or medically equaled the severity of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, 416.926. The ALJ found that a restriction to a range of

medium work was consistent with the longitudinal medical record. After careful consideration of

the entire record, the ALJ made the following findings:

> I find that the claimant has the residual functional capacity to life and carry 50 pounds
> occasionally and 25 pounds frequently, sit, stand, and walk for six hours in an 8-hour day,
> and should avoid concentrated exposure to cold, heat, wetness, humidity, fumes, odors, dust,
> gases, poorly ventilated areas, and chemicals (20 C.F.R. 416.967(c)).

In doing so, the ALJ considered all symptoms and the extent to which those symptoms could

reasonably be accepted as consistent with the objective medical evidence and other evidence. The

ALJ concluded that Plaintiff was capable of performing any of his previous positions, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC according to 20 C.F.R. § 416.965.  Thus, Plaintiff was not disabled as defined by the Act.

**III.    Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679.  Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**IV.    Credibility Determination**

Plaintiff contends that the ALJ erroneously found his testimony regarding his symptoms less than fully credible.  Plaintiff argues that the ALJ should have fully credited his subjective reports concerning the intensity, persistence, and limiting effects of his symptoms, which he alleges are consistent with the overall record.

//

//

10

A.  Plaintiff's Credibility

The ALJ found that although Plaintiff's reported symptoms were consistent with objective medical evidence, his reports of the intensity, persistence, and limiting effects of his symptoms were not fully credible.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the ALJ's finding is

supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

In this case, the ALJ emphasized the insufficiency of the evidence supporting Plaintiff's allegations of total disability. The ALJ noted that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's report of their intensity and limiting effects is simply not supported by the objective medical evidence. Indeed, the ALJ noted that there is no supporting medical evidence. The ALJ also specifically noted Plaintiff's testimony that he is not receiving treatment from, or seeing, a doctor for his eye condition or any other issue.

The ALJ highlighted that, in contrast to his allegations of complete disability, the Plaintiff reported that he remained quite functional in his daily activities. The ALJ described Plaintiff's testimony that he regularly drives without restrictions, tends to his chickens, successfully manages his self-care, prepares simple meals, vacuums, takes out the garbage, washes dishes, does laundry, makes his bed, and sometimes fixes a sprinkler in the yard. The ALJ emphasized the Plaintiff's testimony in which he described how he would return to work tomorrow if he did not have double vision. Justifying his credibility determination, the ALJ reasoned that Plaintiff's self-reported daily activities are not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and total disability.

The ALJ also juxtaposed the Plaintiff's inconsistent statements about why he stopped working. In his prior disability report, Plaintiff reported that he was let go in December 2007 because he was unable to drive a tow truck, but then later testified (and told medical providers) that he was let go because his employer discovered that he was taking high blood pressure medication. Then, in his more recent disability report, Plaintiff claimed to have stopped working in December 2007 due to his condition. His initial testimony was that he stopped working because, as a side-effect of his medication, he was always tired, and he also moved. He later testified that he lost a job because of his blood pressure and his last work was not December 2007, but December 2009. The

ALJ specifically noted that despite Plaintiff's changing testimony, he stated that there have been no changes in his condition or had no new physical or mental limitations since he last completed a disability report.  Plaintiff's subjective reports demonstrate that he has changed his testimony as to the reasons for, and the onset of, his disability.

Plaintiff has provided inconsistent testimony, has not pursued medical care, has changed his alleged onset date, continues to do household chores, performs self-care without assistance, performs light repairs, cooks meals, drives a golf cart, goes out regularly, handles his finances, and generally navigates without assistance.  Additionally, although Plaintiff complained of eye issues – symptoms beyond the historical data in his medical records – there is no evidence of any reports of vision issues, eye conditions, vertigo, falls, emergency room treatment, injuries, or any other condition to support a disability finding on that basis.  Further inconsistencies exist in Plaintiff's claims to the extent that the severity of his symptoms and limitations change when juxtaposed to his representations to physicians and their objective records.  For example, Plaintiff testified that his disability stems from his vision issues yet concedes that he has not sought treatment.  His response when justifying why he has not sought treatment for what he contends is a debilitating condition, essentially Plaintiff's argument is that he does not like doctors because they do not listen to him.  Then, when the ALJ does not find Plaintiff's opinion credible for lack of objective medical support, Plaintiff argues that the ALJ is not listening to him.  Rather than pursuing a disability finding absent any supporting substantive evidence of disability, the Court encourages Plaintiff to first pursue getting the treatment he claims he needs.  That the Plaintiff has not sought treatment – and seemingly would not consider treatment because of his disdain for medical professionals – seriously undermines his claim as to the severity of his condition.  For these reasons, the ALJ found that the Plaintiff's subjective complaints were less than fully credible.

In other ways, Plaintiff's claims are consistent with the objective medical evidence.  Plaintiff testified that he would return to work but-for his vision issues.  Even with his alleged vision issues,

13

Plaintiff testified that he believed that he could presently return to work as a security guard.  At the hearing, Plaintiff testified, "I'm pretty good at concentrating.  Like yesterday, I made a little chicken feed box and [. . .] stayed up a couple of hours making that."  Taken together with his testimony about his daily activities, this is consistent with the State Agency medical consultant's opinion that Plaintiff could perform the full range of medium work.   The State Agency medical consultant further opined that the Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and could sit, stand, and walk for six hours in an 8-hour day.   The ALJ highlighted that the record "does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."

Notably absent from the medical records during the relevant time is evidence that Plaintiff reported to his medical providers having had any difficulties related to double vision.  There is simply no evidence in the record that vision problems, eye problems, or side effects from his medications preclude his functioning at the level required to work in any relevant capacity.  Despite Plaintiff's implicit argument that he has no insurance and thus had no opportunity to receive such treatment or make such complaints, he did have the opportunity during his nearly nine hours at the emergency room in February 2011.  And those records lack any indication that Plaintiff made such complaints.  Despite Plaintiff's allegations that he is entirely disabled, the medical records reveal no treatment for the condition about which Plaintiff complains.  The ALJ highlighted that despite his alleged disability onset in December 2009, Plaintiff had not received any medical treatment on the basis of the complaint instigating his disability claim.  To the contrary, Plaintiff was quite capable.

In sum, the record supports the ALJ's conclusion that Plaintiff lacked credibility as to the degree of his functional limitations because Plaintiff's self-serving representations of his physical condition were inconsistent and the record is void of any supporting medical records.

//

//

B.  Expert Medical Opinions

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion is entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician.  *Id.*, *see also* 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability."  *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  An ALJ must determine a claimant's RFC based on "all relevant evidence in the record."  *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding.  *Magallanes*, 881 F.2d at 751-55.

Where a treating or examining physician's opinion is uncontradicted by another doctor, the ALJ must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ must tie the objective

factors of the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

By arguing that the ALJ erroneously discounted his testimony, Plaintiff implicitly contends that the ALJ erred by favoring the objective opinions of examining and non-examining physicians, who agree that Plaintiff is not disabled, over Plaintiff's subjective opinion that he is disabled. However, the ALJ carefully analyzed the expert opinions regarding Plaintiff's RFC, including those of the consultative State Agency physician. The ALJ explained in detail his preference for the opinion of the physician, whose consultative reports contemplated Plaintiff's various symptoms and diagnoses, the objective medical evidence, and the conservative treatment regime. The ALJ appropriately gave weight to the State Agency physician who opined that Plaintiff was not disabled, an opinion uncontradicted by any other medical professional.

The ALJ limited the weight he gave to the Plaintiff's opinion since it rested primarily on Plaintiff's own unreliable account of his medical history and his reports of symptoms greater than and inconsistent with the objective medical records. The State Agency medical consultant reviewed Plaintiff's medical records and agreed that his impairments were not severe. The ALJ gave substantial weight to the State agency consultant's opinions because the conclusions were consistent with the longitudinal medical evidence.

This Court agrees with the ALJ's analysis. The ALJ set out a thorough and detailed factual history and made his credibility determinations. The ALJ did not fully credit Plaintiff's testimony as to the extent and limitations of his symptoms on the basis that he was not only contradicted by both the state agency physicians, but also by his self-reports and testimony at the hearing. This Court concludes that substantial evidence supported the ALJ's determination to favor the opinions of the doctors and the entirety of the objective medical records, and to reject the severity of Plaintiff's self-

serving opinion.  Since the ALJ gave well-articulated "specific and legitimate" reasons for not fully crediting Plaintiff's subjective reports, and those reasons were supported by substantial evidence in the record, the Court concludes that the ALJ did not err in his assessment of the relative credibility of Plaintiff, nor in his decision to favor the opinion of the majority of the physicians over that of Plaintiff.   Finally, because he has failed to show a changed circumstance material to the determination of disability, Plaintiff has not overcome the presumption of continued nondisability. *See Chavez*, 844 F.2d 691; *see also* AR 97-4(9).

**V.      Conclusion and Order**

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   __**November 3, 2014**__               _____**/s/ Sandra M. Snyder**
                                                     UNITED STATES MAGISTRATE JUDGE